UNITED STATES v. E. C. KNIGHT CO. et al.

(Circuit Court of Appeals, Third Circuit. March 26, 1894.)

No. 6.

MONOPOLIES—CONTRACTS IN RESTRAINT OF INTERSTATE COMMERCE.

The purchase of stock of sugar refineries for the purpose of acquiring control of the business of refining and selling sugar in the United States does not involve monopoly, or restraint of interstate or foreign commerce, within the meaning of the act of July 2, 1890.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was a bill in equity filed by the United States against the E. C. Knight Company, the Spreckels Sugar Refining Company, the Franklin Sugar Refining Company, the Delaware Sugar House, the American Sugar Refining Company, and numerous individuals, to have canceled and declared void certain contracts made by the American Sugar Refining Company with the other defendants, as being the result of a combination or conspiracy to monopolize or restrain interstate and foreign commerce. There was a decree for defendants in the court below, and complainant appeals.

Ellery P. Ingham and Samuel F. Phillips (Robert Ralston, Asst. U. S. Atty., on the brief), for the United States.

John G. Johnson (John E. Parsons and Richard C. McMurtrie, on the brief), for appellees.

Before ACHESON and DALLAS, Circuit Judges, and GREEN, District Judge.

DALLAS, Circuit Judge. There are three assignments upon this record. The first two aver, in general terms, that the court below erred in dismissing the bill of complaint, and in not granting the relief thereby prayed. The third, alone, specifies the alleged error with particularity, and is in these words: "That the court erred in holding that the facts in this case do not show a contract, combination, or conspiracy to restrain or monopolize trade or com-

merce among the several states or with foreign nations." This assignment correctly presents the only question which the case involves.

The bill filed on behalf of the United States is founded wholly upon the act of congress of July 2, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies." Proceedings, such as have been instituted and pursued in this instance, "to prevent and restrain violations of this act," are authorized and directed by its fourth section; and these defendants are charged with violation of its first two sections, which are as follows:

"Section 1. Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof. shall be punished by a fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court.

"Sec. 2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

These sections relate, respectively, to restraint of trade and to monopoly, but, as to both, with respect only to "trade or commerce among the several states, or with foreign nations;" and upon the application of this restrictive language of the law to the facts of this case we base our judgment. The learned judge who heard the cause in the circuit court states, in the opinion filed by him, that:

"The material facts proved are that the American Sugar Refining Co., one of the defendants, is incorporated under the laws of New Jersey, and has authority to purchase, refine, and sell sugar; that the Franklin Sugar Refinery, the E. C. Knight Co., the Spreckels Sugar Refinery, and the Delaware Sugar House were incorporated under the laws of Pennsylvania, and authorized to purchase, refine, and sell sugar; that the four latter Pennsylvania companies were located in Philadelphia, and prior to March, 1892, produced about thirty-three per cent. of the total amount of sugar refined in the United States, and were in active competition with the American Sugar Refining Co.. and with each other, selling their product wherever demand was found for it throughout the United States; that prior to March, 1892, the American Sugar Refining Co. had obtained control of all refineries in the United States, excepting the four located in Philadelphia, and that of the Revere Co. in Boston, the latter producing about two per cent. of the amount refined in this country; that in March, 1892, the American Sugar Refining Co. entered into contracts (on different dates) with the stockholders of each of the Philadelphia corporations named, whereby it purchased their stock, paying therefor by transfers of stock in its company; that the American Sugar Refining Co. thus obtained possession of the Philadelphia refineries and their business; that each of the purchases was made subject to the American Sugar Refining Co. obtaining authority to increase its stock $25,000,000; that this assent was subsequently obtained, and the increase made; that there was no understanding or concert of action between the stockholders of the several Philadelphia companies respecting the sales, but that those of each company acted independently of those of the others, and in ignorance of what was being done by such others; that the stockholders of each company acted in concert with each other, un-

derstanding and intending that all·the stock and property of the company should be sold; that the contract of sale in each instance left the sellers free to establish other refineries, and continue the business, if they should see fit to do so, and contained no provision respecting trade or commerce in sugar, and that no arrangement or provision on this subject has been made since; that since the purchase the Delaware Sugar House refinery has been operated in conjunction with the Spreckels Refinery, and the E. C. Knight refinery in connection with the Franklin, this combination being made apparently for reasons of economy in conducting the business; that the amount of sugar refined in Philadelphia has been increased since the purchases; that the price has been slightly advanced since that event, but still lower than it had been for some years before, and up to within a few months of the sales; that about ten per cent. of the sugar refined and sold in the United States is refined in other refineries than those controlled by the American Sugar Refining Co.; that some additional sugar is produced in Louisiana, and some is brought from Europe, but the amount is not large in either instance..

"The object in purchasing the Philadelphia refineries was to obtain a greater influence, or more perfect control, over the business of refining and selling sugar in this country."

This statement of the facts is quoted at length merely for the purpose of showing the general nature of the case; the only essential fact—and of that there is no doubt—being that the questioned conduct of the defendants does not, according to our view of the law, concern interstate or foreign commerce.    There is no evidence whatever that the defendants have directly monopolized, or have attempted, combined, or conspired to directly monopolize, any part of the trade or commerce among the several states or with foreign nations; or that they have contracted, combined, or conspired in direct restraint of such trade or commerce.    The utmost that can be said—and this, for the present purpose, may be assumed—is that they have acquired control of the business of refining and selling sugar in the United States. But does this involve monopoly, or restraint of, foreign or interstate commerce?    We are clearly of opinion that it does not. The particular language of the act which is now under consideration was manifestly derived from the clause of the constitution by which congress is empowered to "regulate commerce with foreign nations and among the several states;" and the authorities are distinctly to the effect that this grant of power does not include the regulation of manufactures or productive industries of any sort, even where their product is made, or is intended or contemplated to be made,· the subject of commerce beyond the territory of the state where the manufactory or other producing industry is situated or operated.    Manufacture and commerce are two distinct and very· different things.    The latter does not include the former. Buying and selling are elements of commerce, but something more is required to constitute commerce, which, "strictly considered, consists in intercourse and traffic, including in these terms navigation, and the transportation and transit of persons and property, as well as the purchase, sale, and exchange of commodities."

Enough has been said to. indicate the ground upon which our conclusion in this case has been reached, and we do not deem it necessary to say more, inasmuch as the subject has very recently been considered and passed upon in the Case of Greene, 52 Fed.

104, by Judge Jackson (now one of the justices of ·the supreme court), in whose opinion the earlier cases are sufficiently referred to. The decree of the circuit court is affirmed.