## AMERLUX STEEL CORPORATION v. JOHNSON LINE.

Circuit Court of Appeals, Ninth Circuit. June 10, 1929.

No. 5753.

William B. Acton, of San Francisco, Cal., for appellant.

Ira S. Lillick and Lillick, Olson & Graham, all of San Francisco, Cal. (Chalmers G. Graham and John C. McHose, both of San Francisco, Cal., of counsel), for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. This was a libel for damage to a shipment of steel bars such as are commonly used for reinforcing purposes. The bars were 46 feet in length, tied into small bundles, and these in turn into larger bundles, weighing about a ton. The damage claimed by the shipper arose from the bending of the bars through the alleged negligence of the carrier. On final hearing the court below found that the carrier was free from negligence and entered a decree of dismissal, from which the present appeal is prosecuted.

The question presented by the record is largely one of fact. The appellant offered in evidence the bill of lading which contained the common recital that the steel was received in apparent good order and condition. A witness for the appellant testified that he was present and observed the discharge of the cargo at Los Angeles for the period of two or three hours; that 20 or 25 bundles taken from one of the hatches were bent into the shape of a hairpin because of the manner in which the cargo was taken from the hold of the ship and placed on board the cars, and that he protested to some person in apparent authority, but without result. The testimony of this witness was corroborated in a general way by another witness for the appellant. The appellant also offered in evidence a check kept by the check clerk of the railway company to which the steel was delivered upon its discharge from the vessel, and a like clerk of the appellee. This check showed that a considerable number of bundles and a considerable number of single bars in the bundles were bent, but to what extent the check did not disclose. The competency of this testimony was challenged by the appellee on the ground that the check was not verified by the persons who made it, but for present purposes we will assume that the check was competent. As against this, two officers of the ship testified that some of the steel was bent and some of the bundles were loose before the steel was taken from the dock at the point of shipment. Some of the officers of the ship and a surveyor further testified that they observed the manner in which the steel was discharged from the vessel at Los Angeles from time to time, and that none of it was bent as testified by the witnesses for the appellant. No person who actually participated in the discharge of the cargo or who was present at all times during the discharge was called as a witness by either side.

The principal contention of the appellant seems to be that the court below failed to give due consideration to the recital in the bill of lading that the steel was received in apparent good order and condition. The

appellee insists that this recital was qualified by a statement written across the bill of lading to the effect that the ship was not accountable for bending, but we will assume that the latter statement did not refer to the condition of the steel when taken on board the vessel, or qualify in any way the recital that the steel was in apparent good order and condition. In other words, we will assume that the bill of lading was a clean one as claimed by the appellant. But the appellant seems to attribute too much importance to this phase of the case. A bill of lading is both a contract and a receipt. A recital that the shipment is in good order and condition is not contractual and does not amount to a warranty as between the immediate parties. The carrier is free to prove the contrary. Hutchinson on Carriers (3d Ed.) § 157 et seq.; 10 C. J. 200. The recital contained in the bill of lading was therefore only prima facie evidence and was entitled to such consideration as the court deemed proper under the circumstances, and no more. There was no necessary conflict between the record kept by the checkers and the testimony of the officers of the appellee tending to show the condition of the shipment before leaving Antwerp. Both showed that some of the steel was bent, the check being specific as to quantity, while the other testimony was somewhat general. Nor are we prepared to say that the testimony offered by the appellant as to the mode of discharge was not rebutted by the testimony offered by the appellee. The testimony on the part of the appellant was affirmative in character, while that offered by the appellee was negative, and the former is usually more satisfactory and more convincing than the latter; but the statements made by at least one of the witnesses for the appellant would seem to be somewhat extravagant, and we cannot say as a matter of law that the court below was bound to credit the one or discredit the other. The question is not whether we would reach the same conclusion on an independent investigation. The testimony was taken in open court; it supports the findings made; the record discloses no obvious error of fact nor misapplication of any rule of law; and the decree must therefore be affirmed.

At the instance and request of the appellee, the appellant was compelled to advance and pay the cost of reproducing for the printed record certain original exhibits certified to this court by the court below. The request for the reproduction was in our opinion an unreasonable one under the circumstances, and the appellant will therefore recover from the appellee the cost of such reproduction, less the costs taxable in favor of the appellee in this court.