**UNITED STATES v. COLUMBIA GAS & ELECTRIC CORPORATION et al.**

No. 1099.

District Court, D. Delaware.
March 29, 1939.

John J. Morris, Jr., U. S. Atty., of Wilmington, Del., and Milton Katz, Sp. Asst. to Atty. Gen. (C. Thurman Arnold, Asst. Atty. Gen., and Wendell Berge and Hugh B. Cox, Sp. Assts., to Atty. Gen., on the brief), for United States.

Clarence A. Southerland (of Ward & Gray), of Wilmington, Del., and Douglas M. Moffat (of Cravath, de Gersdorff, Swaine & Wood), of New York City, for defendant Columbia Gas & Electric Corporation.

Daniel O. Hastings, of Wilmington, Del., and William H. Button and Auchincloss, Alley & Duncan, all of New York City, for defendant Columbia Oil & Gasoline Corporation.

Stewart Lynch, of Wilmington, Del., and Kenneth E. Walser and Richard B. Hand, both of New York City, for Missouri-Kansas Pipe Line Co., petitioner for leave to intervene.

NIELDS, District Judge.

Missouri-Kansas Pipe Line Company, a Delaware corporation, moves the court for an order granting it leave to intervene in this proceeding and to file the petition annexed to its motion and requiring

defendants respectively to answer or otherwise plead thereto.[1]

Petitioner alleges it owns 324,326 shares of the 728,652 shares of the outstanding common stock of Panhandle Eastern Pipe Line Company.

This suit in equity was brought by the Attorney General of the United States under the Anti-Trust Acts, 15 U.S.C.A. § 1 et seq. The defendants duly answered and denied the material allegations of the bill. Upon a stipulation between the parties to this cause a consent decree (hereinafter referred to as "consent decree") was entered on January 29, 1936. Section V of that decree provided: "That jurisdiction of this cause and of the parties hereto is retained for the purpose of giving full effect to this decree and for the enforcement of strict compliance herewith and the punishment of evasions hereof, and for the further purpose of making such other and further orders and decrees or taking such other action as may from time to time be necessary to the carrying out hereof; and that Panhandle Eastern, upon proper application, may become a party hereto for the limited purpose of enforcing the rights conferred by Section IV hereof."

December 21, 1938 United States of America filed its supplemental complaint praying, inter alia, that this court exercise the jurisdiction retained by it in section V above recited and in order to give full effect to said decree that this court enter judgment:

"3. Directing Columbia Gas to divest itself of all control, direct or indirect, legal or practical, of Panhandle Eastern, * * *.

"(a) Directing Columbia Oil to proceed straightway to formulate and submit to this court for approval, * * * a plan for the sale or other disposition by it of all interest which it may have in any stock of Panhandle Eastern;

"(b) Directing Columbia Gas to proceed straightway to formulate and submit to this court for approval, as an alternative to any plan submitted by Columbia Oil pursuant to paragraph (a), * * * a plan for the sale or other disposition by it of all interest which it may have in any securities having present or potential voting rights in Columbia Oil.

"4. Reconstituting the voting trust established pursuant to said decree of January 29, 1936, so as:

"(a) To make the voting trustee a trustee for sale, * * *" for a limited term and with powers and duties appropriately defined.

The time for answer was extended by stipulation and the answer has not been filed to the Government's supplemental complaint.

February 6, 1939 Mokan filed its motion for leave to intervene in this suit and to file the petition annexed to its motion. The prayers of this petition are:

"1. That the defendants be adjudged guilty of contempt for failure to comply with and for having violated the terms, conditions and provisions of the Decree of this Court entered herein on January 29, 1936.

"2. That said Decree be interpreted, enlarged and enforced as follows:

"(a) That it be decreed that Columbia Gas holds as trustee for Panhandle Eastern its pipe line from Dana to Zionsville, Indiana, and from Zionsville to Detroit, Michigan, and that Columbia Gas be ordered and directed forthwith to transfer said line to Panhandle Eastern upon such terms and conditions for the security of its investment therein as this Court may deem just and to account to Panhandle Eastern for the issues and profits thereof.

"(b) That Columbia Gas be ordered and directed forthwith to cause Michigan Gas Transmission Corporation to transfer to Panhandle Eastern any and all contracts or agreements for the supply of gas entered into with any municipalities, persons, firms or corporations in the States of Indiana, Michigan and Ohio, since the entry of the said Decree.

"(c) That Columbia Oil be ordered forthwith to surrender to Panhandle Eastern at cost for cancellation its Class B preferred stock of Panhandle Eastern and 80,000 shares of the common stock of Panhandle Eastern.

"(d) That Columbia Oil be ordered forthwith to sell its remaining stock of Panhandle Eastern to a purchaser or purchasers and upon terms to be approved by this Court.

---

[1] In the interest of brevity, Columbia Gas & Electric Corporation will be referred to in this opinion as "Columbia Gas", Columbia Oil & Gasoline Corporation as "Columbia Oil", Panhandle Eastern Pipe Line Company as "Panhandle Eastern" and Missouri – Kansas Pipe Line Company as "Mokan".

"(e) That the exceptions set forth in Article II of the decree be stricken out.

"3. That Gano Dunn be removed as Trustee, and that a new Trustee be appointed pending divestiture by Columbia Oil of its Panhandle Eastern securities.

"4. That such other or further relief may be granted as to the Court may seem just and equitable."

In prayer 1 Mokan seeks to raise a question of contempt by defendants in respect to alleged violations of the consent decree of January 29, 1936. By subdivisions (a) and (b) of prayer 2 Mokan seeks to raise a complicated question of property in a transmission line owned by Michigan Gas Transmission Corporation, a subsidiary of Columbia Gas, and extending from the terminus of Panhandle Eastern at Dana, Indiana, to Detroit, Michigan. By subdivision (c) of prayer 2 Mokan seeks to procure the retirement of 80,000 shares of common stock of Panhandle Eastern now held by Columbia Oil. By prayer 3 Mokan seeks to have the past conduct of the trustee appointed under the consent decree of January 29, 1936 inquired into in order that he may be removed for alleged violations of his trust. The statement of these prayers indicates how far they depart from the scope of the supplemental complaint and how serious a delay would be involved in the determination of the questions raised thereby.

### Intervention of Right.

Intervention of right is governed by subdivision (a) of Rule 24 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c:

"(a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: (1) When a statute of the United States confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof."

■ Courts are unanimous in requiring prompt action on the part of an intervenor who seeks to assert rights in a suit to which he is not a party. The new rule above quoted requires that application for intervention be timely. It begins with the words "Upon timely application * * *." The matters of which petitioner complains, —the acquisition by Columbia Gas of ownership of the Detroit extension, the acquisition by Columbia Oil of class B preferred stock of Panhandle Eastern, the acquisition by Columbia Oil of common stock of Panhandle Eastern in connection with the Detroit financing, and the March 17, 1936 contract,—all took place before June 1, 1936. Columbia Gas and Columbia Oil have spent many millions of dollars carrying out the transactions. Petitioner had full notice and knowledge of all these arrangements prior to their consummation. These details were set out in the offer of settlement made by Columbia Oil and Columbia Gas to Mokan and were accepted by Mokan after full hearing thereon in the court of Chancery of the State of Delaware. Obviously Mokan's application is not a timely one.

Clause (1) of subdivision (a) of Rule 24 is plainly inapplicable.

■ Clause (2) of subdivision (a) relates to cases in which the applicant for intervention has an interest in the action represented by a party so that the applicant may be bound by a judgment in the action. The question of adequacy of representation does not arise unless the applicant is represented in the action. Neither Mokan, as a substantial stockholder of Panhandle Eastern, nor Panhandle Eastern, is represented by the United States. The interest of either of them will not be bound by a judgment on the supplemental complaint. The judgment of this court upon the issues tendered in the supplemental complaint will not bind Mokan or Panhandle Eastern. Such a judgment can not bind them with respect to the wholly different issues tendered by Mokan's proposed petition of intervention. Petitioner has no right to encumber the main action which is being conducted by the Attorney General with extraneous issues of a private nature. United States v. Radio Corporation, D.C., 3 F. Supp. 23, 25. United States v. Northern Securities Co., C.C., 128 F. 808, 813.

■ ▪ Clause 3 of subdivision (a) relates to cases in which the applicant will be adversely affected by a disposition of property in the custody of the court in which the applicant asserts an interest. This property consists of stock in Panhandle Eastern beneficially owned by Columbia Oil, and

transferred to the voting trustee. In that stock neither Mokan nor Panhandle has any property right. Any disposition of that stock which would terminate control of Columbia Oil over Panhandle Eastern could not be regarded as adverse to either Panhandle Eastern or Mokan. On the contrary, Mokan seeks such disposition. Early in the English law a third person claiming an interest in property under the control of the court was permitted by interrogatories to establish his claim to or lien upon such property. This principle found expression in old Equity Rule 37, 28 U.S.C.A. following section 723. The new rule does not specifically set forth the nature of the interest in the property which a person must have in order to establish his claim to intervention as a matter of right. It is improbable that the Supreme Court in promulgating this new rule intended to destroy well established principles as the basis of intervention as of right. It would produce chaos to require the courts to recognize the absolute right to intervention of strangers who had no legal or equitable interest in the subject matter of the action.

Clause 3 contemplates that the person having the right of intervention should have a legal interest in the property in the custody of the court. The res in this case is the Panhandle Eastern stock in the possession of Dunn. That stock is not being administered by the court. Dunn is not an administrative officer of the court. His duties as trustee merely contemplate the holding of Panhandle Eastern stock owned by Columbia Oil for the purpose of seeing that the provisions of the consent decree are carried out and that the affairs of Panhandle Eastern are free from the control and domination of Columbia Gas. Dunn is obliged to turn over to Columbia Oil all dividends except certain stock dividends. He must vote the stock in the manner directed by Columbia Oil. He is a mere watchman to see that the provisions of the consent decree are carried out. The stock of Panhandle Eastern is not "in the custody of the court or of an officer thereof" within the meaning of Rule 24(a).

Petitioner's final contention is that Rule 24(a) has broadened the well established principle to the extent of no longer requiring "any actual property interest in the res". This position is without authority to sustain it.

## Permissive Intervention.

Permissive intervention is governed by subdivision (b) of Rule 24 of Rules of Civil Procedure, 28 U.S.C.A. following section 723c:

"(b) *Permissive Intervention.* Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties".

Clause (1) has no application. Clause (2). The prayers of the proposed petition of intervention diverge sharply from the subject matter of the supplemental complaint. Affording petitioner relief would fundamentally alter and seriously complicate the character of this proceeding. The bare statement of the prayers sufficiently indicates how far they depart from the scope of the Government's complaint and how serious a delay would be involved in the determination of the questions raised thereby. The situation thus falls squarely within the last sentence of subdivision (b) which codifies prior equity practice.

"The intervener was not entitled to come into the suit for the purpose of having adjudicated a controversy solely between it and plaintiff. Issues tendered by or arising out of plaintiff's bill may not by the intervener be so enlarged. It is limited to the field of litigation open to the original parties. * * * Introduction by intervention of issues outside those that properly may arise between the original parties complicates the suit and is liable to impose upon plaintiff a burden having no relation to the field of the litigation opened by his bill". Chandler & Price Co. v. Brandtjen & Kluge, 296 U.S. 53, 57, 59, 56 S.Ct. 6, 8, 80 L.Ed. 39.

"It is apparent that, the right to become a party to the litigation being given, the range of activity of the newcomer in the prosecution or defense of the interest he is thus permitted to assert *must* necessarily be as extensive as, but no greater than, that allowed the original parties to the suit". Leaver v. K. & L. Box & Lumber Co., D.C., 6 F.2d 666, 667.

Anti-Trust Suit.

■ An individual may not participate in a suit brought under the Anti-Trust laws by the Attorney General of the United States where the Attorney General does not consent to such intervention. In the present case the Attorney General affirmatively objects to the intervention. In its brief the government states that the United States opposes the motion of Mokan for leave to intervene "because (1) Mokan is not entitled to intervention of right, and (2) intervention by Mokan for the purposes set forth in its proposed petition would unduly complicate and delay the adjudication of the issues tendered by plaintiff's supplemental complaint". When the Anti-Trust laws are violated frequently there are private persons or corporations who feel themselves aggrieved.

■ Outside this suit Mokan can assert any claim for damages it may have against the defendants or for relief against Dunn for his alleged breaches of trust. Such a right has been recognized by this court.

"However, the petitioner and other stockholders of Radio Corporation should not be deprived of their 'day in court.' The petitioner or any stockholder of Radio Corporation believing himself aggrieved by the action of General Electric or Westinghouse under or pursuant to the provisions of the consent decree may file a bill in this court seeking appropriate relief." United States v. Radio Corporation, D.C., 3 F. Supp. 23, 26.

Mokan's motion for leave to intervene must be denied.